In the report and petition of the trustees of the Fidelity Union Title and Mortgage Guaranty Company as of the close of business October 31st, 1934, instructions of the court were requested touching the disposition of certain amortization payments made to the trustees upon mortgages against which guaranteed first mortgage certificates had been issued. It was the practice of the company prior to the appointment of the trustees to issue two forms of guaranteed first mortgage certificates. With the first form, or ordinary certificate, we are not concerned; but a controversy has arisen with respect to the relative rights of investors in the second form of certificate, issued in cases where amortization installments were payable on the mortgage at specific intervals before the due date of the major part of the principal. These certificates indicated on their face that the mortgage against which they were issued was payable in installments. Some certificates were payable out of amortization installments and some out of the final installment, but all were payable out of a specific installment. Those payable out of amortization installments were classified as "short term" certificates and to indicate such classification the letters "S T" appear on each of such certificates immediately preceding its number. No such letters appear on the certificates referring to the final installment, *Page 157 
or major part of the principal, payable on the due date of the mortgage, but they are generally referred to, in company parlance, as "long term" certificates. In all other respects the short term and the long term certificates are in identical language.
It was the practice of the company to pay the short term certificates out of amortization payments when made. The holders of "short term" certificates claim to be entitled to priority of payment (a) out of the particular amortization payment mentioned in their respective certificates; or, (b) at all events, out of the proceeds of the mortgage when satisfied either by payment, foreclosure or otherwise.
The form of "S T" certificate issued by the company contained an assignment clause which reads as follows:
"In consideration of the sum of ____ Dollars, receipt of which is hereby acknowledged, has assigned, transferred and set over and by these presents does assign, transfer and set over unto ____ (hereinafter termed the Assured) an undivided interest to the extent of the above stated sum in and to the bond of ____ dated ____, conditioned to pay ____ Dollars (besides interest), in installments one of which amounting to ____ Dollars is payable on the ____ day of ____, 19__, and in and to that certain first mortgage, which secures the said bond, recorded in the office of the ____ of ____ County, New Jersey, in Book ____ of Mortgages for said County on page ____, covering premises in the ____ of ____, County of ____ and State of New Jersey."
This was followed by a guaranty clause, which reads as follows:
"And the Company hereby guarantees to said Assured or to any other lawful holder of this certificate, but subject to such reduction for taxes as may be required by law: (1) payment of interest at the rate of ____ per cent. per annum from the day of the date hereof, upon the principal sum for which this certificate is issued, on the first day of ____ next and semi-annually thereafter until said installment of principal sum specifically referred to above shall be wholly paid or deposited to the account of the assured; (2) payment of said principal sum for which this certificate is issued as and when collected outof said installment of principal specifically referred to abovesecured by said bond and mortgage but in any event within eighteen months after the payment shall be demanded by the Assured, provided such demand be made after said installment shall have become due under the terms of said bond and mortgage, or of any extension thereof assented to by Assured, as hereinafter provided." *Page 158 
Other provisions in the mortgage certificate which may have some bearing on the issue are as follows:
"This certificate is not valid unless identified by the signature of the President of the Company and the Secretary or an Assistant Secretary and the corporate seal attached. It is registered and is transferable by written assignment only to be registered in the name of the assignee and is given upon the following terms which the assured accepts as constituting the contract between the assured and the Company, to wit.:
a. The Company may issue participations of similar tenor in such amounts as it may desire and upon its surrender and cancellation of existing participations may issue in lieu thereof new participations, either for the original sums or otherwise, but in no event shall the total participations issued or to be issued aggregate more than the amount of the principal moneys remaining unpaid on said bond and mortgage.
b. The Company is appointed irrevocably by the Assured the agent and attorney of the Assured to collect, sue for and receive the principal and interest secured to be paid by the said bond and mortgage and to satisfy and discharge the said mortgage in its own name upon receiving full payment thereof; to collect, sue for and receive, and settle or compromise fire insurance and other insurances in case of loss; to exercise any right, option or privilege given to the mortgagee in said bond and mortgage, or either of them, or in any extension thereof.
c. Whenever the principal sum secured by said bond and mortgage shall become due for any cause the Company shall have the right, without expense to or waiver of any rights by the assured, to collect the same and out of the proceeds of such collection to retain so much as may remain after paying to the assured whatever may be due to the assured of principal and interest under this certificate.
d. In the event of the payment of a part of the principal sum secured by said mortgage the Company shall have the right to retire any certificate to an equivalent amount or to hold the amount so paid for the benefit of the holders of all the certificates of said mortgage. * * *
h. The Company may for its own corporate account be the holder or pledgee of one or more certificates which may be issued by the Company with respect to the bond and mortgage aforesaid, and, to the extent of such certificates, share in the same manner as the Assured, and in such event nothing herein contained and nothing in such act shall be construed to operate as a merger of the interests represented by the Assured and the mortgagee interest in said mortgaged premises held by said Company for all certificates held thereunder."
Attached to each such mortgage certificate were two other certificates; one, the so-called "qualification certificate" of *Page 159 
the Fidelity Union Title and Mortgage Guaranty Company, and the other, the so-called "deposit certificate" of the Fidelity Union Trust Company with which latter company the mortgage and title papers were deposited for the benefit of all persons interested therein. These certificates are as follows:
 "QUALIFICATION CERTIFICATE
"Fidelity Union Title and Mortgage Guaranty Company of Newark, New Jersey, a title guaranty corporation organized under the laws of the State of New Jersey, hereby certifies that the mortgage described in the foregoing participation certificate is a first lien upon improved real estate; that the amount thereof, at the time of making said loan, did not exceed sixty per cent. of the estimated worth of the real estate covered by said mortgage; that the rate of interest accruing on said mortgage is not less than three per cent. nor more than six per cent. per annum; that the bond secured by said mortgage has been divided into shares or parts, evidenced by participation certificates in tenor similar to the foregoing instrument, except as to amount; and that none of the said shares or parts is subordinate to any other bond issued thereunder nor subordinate to any prior interest therein.
 FIDELITY UNION TITLE AND MORTGAGE GUARANTY COMPANY. By ______________________________ Assistant Treasurer."
Dated ____.
 DEPOSIT CERTIFICATE
"Fidelity Union Trust Company of Newark, New Jersey, a trust company organized under the laws of the State of New Jersey, hereby certifies that the certain indenture of mortgage described in the foregoing participation certificate, together with the bond or obligation therein described, and the insurance policies and title guaranties and other instruments and evidences of title relating thereto, are held by it for the benefit of all persons interested in said bond and mortgage as the holders of shares or parts thereof or therein, evidenced by participation certificates of similar tenor, except as to amount, issued by Fidelity Union Title and Mortgage Guaranty Company.
 FIDELITY UNION TRUST COMPANY. By __________________________ Trust Officer."
Dated ____.
As between holders of "S T" certificates and the company itself, the rights of the respective parties to the transaction depend upon the terms of their contract and their intention *Page 160 
as evidenced by the language of the certificate, which must be read from its four corners. The conclusion that the parties intended that the investor should be entitled to payment out of the particular amortization installment referred to in the certificate itself seems inescapable, and it matters not that the assignment was of an undivided interest instead of a particular amortization installment in the mortgage. The assignment and the guaranty are co-ordinate and inseparable clauses of the same document and must be read together to determine the intention of the parties.
Under the provisions of paragraph "d" of the certificate, the company reserved to itself the right to apply amortization payments to the retirement of any certificate of its choice, or to hold the amount of such payment for the benefit of the holders of all the certificates in the mortgage. This reservation would not entitle the company to disregard its guarantee of payment out of a particular installment; but, unless qualified by some other provision in the certificate, it does authorize the company, as against the holders of long term certificates, to apply amortization payments, as and when received, to the retirement of certificates issued against such particular installment. As this provision was contained in every mortgage certificate issued by the company, every investor in such certificates must be deemed to have had notice of and to be bound by it.
But it is insisted by the holders of the long term certificates that the qualification certificate and the deposit certificate above quoted are inconsistent with the suggested intention and that irrespective of intention the long term certificate holders had a right to rely upon such qualification and deposit certificates.
In considering the effect of these two certificates it must be borne in mind that they are not contained in the body of the mortgage certificate, but are attached to it and are merely descriptive of the document to which attached. The "qualification certificate," after reciting the division of the mortgage referred to into shares or parts evidenced by participation certificates "in tenor similar to the foregoing instrument, *Page 161 
except as to amount," then certifies "that none of said shares or parts is subordinate to any other bond issued thereunder nor subordinate to any prior interest therein." This is, in effect, the language of the statute. See chapter 144 (P.L. 1922 p.255), as amended, chapter 305 (P.L. 1926 p. 506) and chapter 81 (P.L. 1927 p. 144). Its obvious purpose was to indicate to the investor that the mortgage certificate to which it was attached was a legal investment for trust funds. It is contended that this certificate is false and in conflict with the main certificate to which it is attached. Conceding this, it does not affect the rights of the "S T" certificate holders although it might, if false, confer upon the investor in the long term certificates a right of action in tort against the mortgage company. It is also argued that in view of the language of the statute (P.L. 1927 ch. 81 p. 144) the mortgage company was without power to issue short term certificates, or any certificate which entitled the holder to priority in payment over any other certificate in the same mortgage; and that, therefore, the "S T" certificate holders have no priority rights; but this is a non sequitur and the argument is unsound. The provisions of that act are restrictive of the power of trustees to make investments, not of the power of mortgage companies to issue mortgage certificates. The most unfavorable construction of this language could spell no more than a breach of trust by the investing trustee — certainly not the invalidity of the mortgage certificates. But, properly interpreted and construed, it spells neither. To determine the meaning of the quoted language in the qualification certificate, we must determine the meaning of the same language as used in the statute. What it means in the one case it must also mean in the other. The primary question is, what did the legislature mean by the word "subordinate?" In my judgment, it meant inferior with respect to the lien or security of the mortgage — occupying a secondary position with respect to that security. The word refers to the lien or security, and not to the time of payment. Ordinarily the question of subordinacy would not arise until default and resort to the security for payment. At that time *Page 162 
all certificates stand on an equal footing — all are equally secured — and all are entitled to pro rata participation in the proceeds of the security.
The word is here used as an adjective and, as used, relates either to the words "shares or parts" or the word "interest." As an adjective, it is defined in the Encyclopaedic Dictionary as "placed in a lower order, class, or rank; occupying a lower position in a regular descending series. Inferior in order, nature, dignity, power, importance, or the like." The StandardDictionary defines "subordinate," as an adjective, as "belonging to an inferior order in classification; having a lower position in a recognized scale; secondary, minor." Clearly, subordinate, as here used, means not co-ordinate. A careful reading of the act authorizing the investment of trust funds in "shares or parts of bonds secured by mortgage" (P.L. 1927 ch. 81 p. 144) indicates, it seems to me, a legislative intent to require, as a condition of eligibility for such investment, first, that the mortgages securing such shares or parts should be "a first lien upon improved real estate;" second, that the mortgage does not exceed sixty per cent. of the estimated value of the real estate covered thereby; third, that the mortgage should bear interest of not less than three nor more than six per cent.; and fourth, that all shares, certificates or bonds should be equally secured and have equal recourse to the property pledged as security for their payment. There was no inhibition of the issuance by mortgage companies of serial bonds, or certificates, nor of the investment of trust funds therein. Indeed, it might well be advisable from the standpoint both of the company and the trustee investor that such shares, certificates of interest, or bonds, should be issued in series payable at the expiration of different intervals, and subject to reissuance and resale by the company upon payment to the original investor. This right was specifically reserved to the company in paragraph "a" above quoted. And, so long as every share or certificate, irrespective of series, or time of payment, was equally secured by the mortgaged premises, and was entitled to equal recourse to that security for payment in the event of default, none *Page 163 
would be subordinate to any other within the meaning of the act. It will be noted that the statute authorizes the investment of trust funds not only in shares or parts of a particular mortgage, but also in certificates secured by a deposit of a series or number of mortgages, and in bonds secured by a trust mortgage. It was common practice among mortgage companies in prosperous times, when the payment of mortgages on their due date might reasonably be expected, to issue certificates payable at a definite time, say ten years from their date, but callable upon certain notice after three years. And such certificates were paid upon call and reissued, or resold, by the issuing company. Surely no one could contend that certificates not called for payment were subordinate to those which were called. The same security continued liable for the payment of all and none was subordinate to any other. Both issuing company and trustee investor were well within their rights under the act. The concern of the legislature was to protect trust funds from investment in shares or certificates secured by second or subordinate mortgages.
The so-called short term and long term certificates may be likened to municipal bonds which, under our law, are payable serially. If the city of Newark issued bonds to the amount of $1,000,000, payable $50,000 each year for a period of twenty years, all of the bonds would stand on an equal plane, except as to the time of payment, and would be equally backed by the same security, namely, the credit of the city. Those payable the first year would not be subordinate qua security, to those payable at a later date. In the event of a default all bondholders would have recourse to the same security for payment. Such bonds are co-ordinate obligations and none is subordinate to any other. And so with the short term and long term mortgage certificates. Indeed, here, upon payment of an amortization and retirement of the certificate issued against it, the mortgage not being in default, the proportionate security back of the remaining certificates is increased.
In view of the above construction and interpretation of the *Page 164 
language of the statute and the qualification certificate no comment upon the so-called deposit certificate is necessary except to say that it is of the depository trust company and not of the issuing mortgage company.
The issues here involved are clearly distinguishable from that in the claim of the estate of Grace Fryer for amortization payments on mortgage 73370 just decided. 118 N.J. Eq. 152. In that case the remaining certificate holders had no notice of the arrangements between the company and Grace Fryer. Here the mortgage certificates contain ample notice of the issuance of short term certificates against amortization payments. The assignment clause contains language clearly indicating that the mortgage was payable in installments and the reference to the record of the mortgage was notice of its terms. Every certificate issued against a mortgage subject to amortization was issued against a particular installment — the "S T" certificates against the amortization installments (although not mentioned as such) and the long term certificates against the finalinstallment. The use of the word "installment" in every certificate was significant. Investors were put upon inquiry as to the proposed disposition of amortization installments. Had they made such inquiry they would have learned the facts of which they now complain. They are bound by what they would have thus learned.
When this question was submitted, counsel for the Fidelity Union Trust Company filed with the court four states of the case, which were supposed to present the various phases of the controversy touching the short term certificates.
An examination of them, however, at once indicated that they could not be used as the basis for decision of the issues presented, or for instructions to the trustees. Included in the several states of the case were references to all mortgages, by number, in which the trust company had any interest, divided into the four respective classes to which the states of the case applied. Obviously, a decision based on any one state of the case could not bind investors in the mortgages mentioned who had not joined in preparing it, and who had *Page 165 
not been given an opportunity to be heard, and the court has therefore chosen to base its decision and instructions upon the several phases of the problem as presented in the trustees' report and petition.
After receiving the instructions sought, the trustees must determine whether any particular mortgage comes within the specific classification to which the instruction applies. In cases of doubt, the trustees, of course, may ask for instructions applicable to the particular mortgage involved, and an appeal would lie from the decision of the trustees in any case. The states of the case referred to are therefore withdrawn and returned to counsel who filed them.
In the report and petition of the trustees, hereinabove referred to, the various phases of the short term certificate controversy touching which the instruction of the court is sought were stated as follows:
(Note — The court's instructions follow immediately after the quoted classification.)
"a. 14 payments totaling $2,432.50 represent payments made by mortgagors on account of amortizations in cases in which no short term certificates were issued against the amortization, thus leaving the amortization as unsold and owned by the Company, or in which the company owns the short term certificates, as a result of having paid the holder of the short term certificate which had been issued against the amortization the amount due the holder at the maturity of the short term certificate."
The trustees are advised and instructed that the mortgage company shares pari passu with all other investors in certificates in each particular mortgage.
"b. 60 payments totaling $11,515 represent payments made by mortgagors in liquidation of amortization payments and represent two classes of cases: (1) where the short term certificates had been originally held by investors and at maturity had been paid off by the company, and then had been reissued to Fidelity Union Trust Company as collateral to the note of the Title Company; (2) cases in which the short term certificates never had been issued to investors, but were originally issued to Fidelity Union Trust Company and pledged (either before or after maturity) as collateral upon the note aforesaid." *Page 166 
The trustees are advised and instructed that the mortgage company shares pari passu with all other investors in certificates in each particular mortgage and that the pledgee's rights rise no higher than those of the pledgor — the company.
"c. 55 payments totaling $30,240 represent amortization payments made by mortgagors to liquidate amortization payments against which short term certificates were issued and held by investors."
The trustees are advised and instructed that the holders of short term certificates are entitled to receive these amortization payments at once.
"d. 28 payments totaling $7,565.73 represent payments made by mortgagors to liquidate amortization payments on mortgages which were extended under the following circumstances:
(1) Where, as a condition for the extension of a mortgage wholly, with respect to the amount then due, sold in so-called long term certificates to investors, the mortgagor was required to reduce the amount of the mortgage by amortization payments, and one or more of the long term certificates were converted into short term certificates representing the amortization payments provided for in the extension;
(2) Where, under similar circumstances, one of the investors holding a long term certificate refused to consent to the extension unless his certificate was converted into a short term certificate."
The trustees are advised and instructed that such payments are to be distributed pro rata among all holders of certificates in the same mortgage. As a matter of fact, in these cases no "S T" certificates were issued but "renewal" certificates, referring to particular amortization payments, were issued to holders of ordinary certificates and of such arrangements the remaining certificate holders had no knowledge or notice. Of course, where notice to and assent by all other certificate holders can be shown, the holder of the renewal certificate would be preferred. This applies to both (1) and (2). In re Fidelity Union Title,c., Co., 118 N.J. Eq. 152.
Paragraph 20 a (Arbitrary number) page 18:
"Of the total amount of $51,743.23 held by the trustees representing payments on account of amortizations as of October 31st, 1934;
a. $21,193.50 was paid by the mortgagors on account of amortization in cases in which at the time of the payment the mortgagors *Page 167 
were in default for defaults other than failure to pay amortizations to such an extent as would have warranted the Company or the Trustees, as the case might be, to declare a default, which condition of default, although the default might be with respect to different matters, continued to exist as of October 31st, 1934."
The trustees are advised and instructed that these payments are to be distributed pro rata among all holders of certificates in the same mortgage. Upon default of the mortgagor, necessitating resort to the mortgage security for payment, all certificate holders are entitled to share in that security pro rata to the extent necessary to satisfy their respective claims.
"b. $10,107.50 represents moneys paid by mortgagors on account of amortizations in cases in which at the time the payments were made the mortgages were not in default to such an extent as would have warranted the company or the Trustees in declaring a default, except only that, represented in said sum, there may be a sum paid on mortgages where the amortization payments were made after the expiration of the thirty days allowed by the mortgages for payment after due date, but all of the mortgages upon which has been collected the said sum of $10,107.50 on account of amortization payments were in default as of October 31st, 1934, to such an extent as that the Trustees could declare a default;"
The trustees are advised and instructed that the holders of short term certificates are entitled to receive these payments at once.
"c. $18,342.23 represents payments made by mortgagors on account of amortization in cases in which at the time of payment there was no default by the mortgagor which would have warranted the company or the Trustee in declaring a default, and where there has been no default subsequent to that time and the mortgages are not in default as of October 31, 1934, except that $2,992.23 of said sum of $18,342.23 paid on account of amortization, was so paid after the expiration of the thirty days allowed for payment after the due date;"
The trustees are advised and instructed that the holders of short term certificates are entitled to receive these payments at once.
"d. $2,100 represents payments made by mortgagors on account of amortization in cases in which there was default on the mortgages *Page 168 
sufficient to permit the company or the trustees, as the case might be, to declare a default and which defaults were subsequently cured, and said mortgages are not now in default;"
The trustees are advised and instructed that the holders of short term certificates are entitled to receive these payments at once.
"e. Certain of the payments included in the figures above given were made by the mortgagors on account of amortization in cases in which, after the making of the payment although there was no default at the time of the payment, the principal sum of the mortgage has become due and there has been default in the payment of principal, although no other default;"
The trustees are advised and instructed that the holders of short term certificates are entitled to receive these payments at once.
"f. While there are no cases with respects to amortization payments which have been received included in the $51,743.23 now held by the Trustees, cases may arise in the future in which amortization payments will be received after the actual declaration of default by the Trustees and even after foreclosure proceedings have been instituted."
The trustees are advised and instructed that such amortization payments should be distributed pro rata among all holders of certificates in the same mortgage and that none is entitled to preference over any other.
Paragraph 21.
The trustees are advised and instructed to make adjustments of interest as suggested.
Holders of "S T" certificates are not entitled to interest on deferred payments unless the trustees have received interest thereon. A claim for such interest, payable only out of surplus assets of the company on final liquidation, may be filed with the trustees if desired.
I will advise an order in accordance with these conclusions. *Page 169